IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT JACOBSEN, et al.,<br><br>        Plaintiffs,<br>  v.<br><br>AURORA LOAN SERVICES, LLC, et al.,<br><br>        Defendants.<br>_____/ | No. C 12-0135 RS<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING AURORA'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING CAL-WESTERN'S MOTION TO DISMISS** |

I. INTRODUCTION

Plaintiff Robert Jacobsen initiated this action in the small claims division of Contra Costa County Superior Court, seeking to rescind a trustee's deed issued to defendant Aurora Loan Services, LLC after a non-judicial foreclosure sale of residential real property. Jacobsen, who had obtained a grant deed to the property from the prior owner, also sought to compel issuance of a new trustee's deed in his favor, contending that his cash bid of $500 at the foreclosure sale should have been recognized as the winning bid, rather than Aurora's bid of approximately $1.5 million. After defendants removed the action to this court, Jacobsen filed an amended complaint, in which Michael O'Brien, the original property owner, joined as a plaintiff. While the amended complaint asserts additional theories of liability, it prays for substantially similar relief, plus damages. The amended complaint also names Mortgage Electronic Registration Systems, Inc. ("MERS") as a defendant, in

addition to Aurora and Cal-Western Reconveyance Corporation, the entity that conducted the foreclosure sale.

Plaintiffs now seek partial summary judgment, arguing that they are entitled to equitable relief as a matter of law on the basis that the original lender purportedly was not a legal entity capable of entering into the deed of trust under which the foreclosure took place. Aurora and MERS, in turn, seek summary judgment on all plaintiffs' claims. Cal-Western separately moves to dismiss the complaint on grounds that it fails to state a claim. For the reasons set out below, plaintiffs' motion will be denied, and defendants' motions will be granted.

## II. BACKGROUND

A. Procedural history

As noted, this matter began in the small claims division of the state court and was removed here by defendants. Aurora then moved to dismiss the complaint. Jacobsen responded by acknowledging that the complaint, filed on small claims court forms, was inadequate, and he requested leave to amend. Before the motion was heard, Jacobsen filed a First Amended Complaint, in which O'Brien joined as a co-plaintiff. Both Jacobsen and O'Brien were appearing *in pro se* at that juncture. While leave to amend had not been expressly granted, Jacobsen presumably was exercising his right under Rule 15(a) of the Federal Rules of Civil Procedure to amend once as a matter of course, and defendants have not objected that the filing was procedurally improper.

Several days later, plaintiffs filed another document, also entitled as a "First Amended Complaint," but docketed as the "Second Amended Complaint." That document, filed by counsel on behalf of plaintiffs, contains several minor changes to the First Amended Complaint, none of which would affect the analysis in this order. In any event, plaintiffs have subsequently disclaimed the latter pleading, asserting it was filed in error. Accordingly, the operative pleading is the First Amended Complaint, filed February 3, 2012 (Dkt. No. 8). As such, the original motion to dismiss filed by Aurora (Dkt. No. 5) is moot, and it will be denied on that basis.

Shortly after filing the First Amended Complaint, plaintiffs moved for partial summary judgment. Aurora, now joined by MERS, opposed the motion and filed their own cross-motion for

summary judgment, in lieu of answering or moving to dismiss. Cal-Western, which is separately represented, moved to dismiss.

On its own motion, the Court directed the parties to provide further briefing as to whether there was a jurisdictional basis to remove the action to this Court. All sides have responded urging the Court to assert jurisdiction, on various grounds. As explained below, while it remains doubtful that there was a basis for removal at the time the notice was filed, jurisdiction is now proper, and the motions for summary judgment and dismissal may be considered on the merits. Pursuant to Civil Local Rule 7-1, those motions are appropriate for disposition without oral argument.

### B. Underlying transactions

In 2006, O'Brien and his then-spouse obtained a loan for $1,240,000, to be secured by the real property that is the subject of this action. The lender was identified in the loan documents as "Direct Funding," or in some instances as "Direct Funding, a California Corporation." The loan was originally serviced by GreenPoint Mortgage Funding, Inc. Aurora took over as the loan servicer in 2007.

Aurora contends the O'Briens' monthly payments became erratic beginning in 2009, and stopped altogether after November of 2010. Following the default, MERS, the beneficiary under the deed of trust, assigned its interest to Aurora, and Cal-Western was substituted as the trustee.

In March of 2011, Cal-Western commenced foreclosure proceedings by recording a notice of default against the property. In July of 2011, presumably in connection with the dissolution of their marriage, O'Brien and his wife executed a deed conveying the property to him alone. The validity of that transaction is not an issue in these proceedings.

A trustee's sale eventually went forward on September 13, 2011. The day before that sale, O'Brien deeded his interest in the property to Jacobson, noting on the deed that it was "fully encumbered." Jacobsen appeared at the trustee's sale and tendered a $500 cash bid. Cal-Western, however, issued a trustee's deed conveying the property to Aurora for its winning cash bid of $1,513,815.43. Plaintiffs have offered evidence that Aurora participated in the sale through Cal-Western—i.e., that no representative of Aurora was physically present at the auction. They also

insist that Aurora's bid was a "credit" bid, but have offered no evidence to dispute the representation in the trustee's deed that it was a cash bid.[1]

## III. LEGAL STANDARDS

### A. Motions to dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 US at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 US at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true).

---

[1] Plaintiffs appear to be relying on a presumption that if Aurora was not physically present at the sale to tender a cash payment, its bid must have been a credit bid. They have failed to show, however, that to have been the case.

4

B. <u>Motions for summary judgment</u>

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if

1 the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury
2 could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the
3 record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there
4 is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Jurisdictional issue

As noted, an order to show cause previously issued, directing defendants to address whether removal on the stated grounds of diversity was proper, given Cal-Western's status as a citizen of California. In response, all parties urge the Court to assert jurisdiction. Cal-Western argues that the Court should simply take up and grant its motion to dismiss, thereby removing it from this action. That argument lacks merit, as it would be improper to address the merits of Cal-Western's motion without a basis to exercise jurisdiction in the first instance.

Aurora and MERS offer the theoretically tenable argument that Cal-Western's citizenship may be disregarded, because it was "fraudulently" joined. Aurora and MERS also contend that even if diversity jurisdiction was lacking at the time of the removal, the federal Truth in Lending Act ("TILA") claim added to the First Amended Complaint provides a basis for going forward in this forum now. Plaintiffs, in turn, dispute that Cal-Western was fraudulently joined, but they purport to "consent" to the removal, and also argue that the TILA claim now supports jurisdiction.

Although removal jurisdiction cannot be manufactured by a plaintiff's "consent," Aurora, MERS, and plaintiffs are correct that the inclusion of the TILA claim in the First Amended Complaint permits the Court to exercise jurisdiction now, whether or not removal was proper at the outset. *See Chabner v. United of Omaha Life Insurance Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000) (holding that post-removal amendment of complaint to add federal claim supported jurisdiction despite "questionable" assertion of diversity jurisdiction at time of removal).

B. Plaintiffs' claims

While pleaded in seven counts, the First Amended Complaint rests on four basic theories. Defendants have shown each of them to be without merit.

1. The lender's legal status

The sole ground of plaintiffs' motion for summary judgment, and the primary basis for their opposition to defendants' motions, is their contention that the deed of trust recorded against the property was *void* from the outset, because "Direct Funding" is not, and has never been, a legally incorporated entity with the power to enter into contracts. The undisputed facts, however, show that "Direct Funding" was merely a fictitious business name used by Bush & Hewitt Holding, Inc., which at all relevant times was a duly formed California corporation, and that Bush & Hewitt had filed appropriate fictitious business name statements in accordance with California law. Plaintiffs' arguments that there nevertheless is some triable issue of fact because certain documents misstate the company name as Bush & Hewitt Holding<u>s</u>, Inc., or because the loan documents did not disclose the corporate name, border on the frivolous. Likewise, the mere fact that the deed of trust referred to "Direct Funding, A California Corporation," does not support a conclusion that it is void as a result. While it arguably was not technically correct to refer to Direct Funding, rather than Bush & Hewitt as a "California Corporation," plaintiffs' suggestion that the O'Briens therefore had no obligation to repay the $1.24 million they received, or that the loan cannot be deemed to have been secured by the property, is untenable.

2. The purported TILA violation

While the First Amended Complaint fails to identify precisely how plaintiffs contend TILA was violated, the parties agree that the issue is whether or not Aurora ever became an *owner* of plaintiffs' loan, such that a duty to give written notice arose under 15 U.S.C. § 1641(g). Aurora has shown that it merely became a *servicer* of the loan, and therefore no duty to notify under § 1641(g) was triggered. *See* 12 CFR § 226.39(a)(1) ("a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer,

7

1  solely for the administrative convenience of the servicer in servicing the obligation.")  In arguing to
2  the contrary, plaintiffs rely on their insistence that Aurora could not have submitted a credit bid at
3  the foreclosure sale unless it was the owner of the loan.  Even assuming that Aurora was required to
4  bid in cash absent full ownership of the loan, plaintiffs have failed to submit evidence to call into
5  question the representation of the trustee's deed that Aurora *did* acquire the property with cash.

       3.  <u>Interference</u>

Plaintiffs allege that prior to the foreclosure, they were attempting to consummate a transaction whereby O'Brien would sell the property to Jacobsen, allowing O'Brien to pay off the loan in full.  Plaintiffs contend that Aurora tortiously interfered with the economic relationship between them by failing to provide payoff information and refusing to postpone the foreclosure sale further.

While plaintiffs allege the existence of an actual contract between them, it is not entirely clear whether they are claiming interference with contract, or only interference with prospective economic advantage. The elements of a claim for intentional interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas and Electric Co. v. Bear Stearns & Co*. 50 Cal.3d 1118, 1126 (1990).  Where there is no existing contract, but only "prospective economic advantage," a plaintiff must also show that "the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995).

Regardless of which theory plaintiffs are pursuing, they have failed to show a triable issue of fact that Aurora committed any actionable act of "interference."   Plaintiffs' opposition only mentions the claim in passing and offers neither facts nor legal analysis to support it. The evidence shows that plaintiffs were contemplating a possible "short sale," for which the lender's consent would be required.  They have not shown that Aurora or the lender breached any duty in failing to provide such consent, or even that they ever applied for it.

8

####	4. Bidding at the foreclosure sale

Finally, as noted above, plaintiffs contend that Jacobsen's cash bid of $500 should have been recognized as the winning bid at the auction. While plaintiffs assert that Jacobsen's declaration creates a triable issue of fact as to whether Aurora was allowed to make a credit bid, the declaration actually asserts only that he was told the "lender" was the highest bidder, not the form of the bid. Nor have plaintiffs made a showing that it would be improper for Aurora to make a credit bid in any event.

###	C. Disposition of motions

Because plaintiffs' contention that Direct Funding lacked legal capacity to contract is factually and legally unsound, their own motion for partial summary judgment must be denied. By the same token, Aurora and/or MERS are entitled to summary judgment in their favor on the claims for relief to the extent they are based on that theory. Because plaintiffs' arguments that Jacobsen was the winning bidder also fail, summary judgment must be granted (1) in favor of Aurora on the "Quiet Title" claim; (2) in favor of Aurora and MERS on the "Wrongful Foreclosure" claim, and; (3) in favor of Aurora on the "Cancellation of Instruments" claim. The claim against Aurora under a "common count" for "money mistakenly paid" also relies on plaintiffs' contention that the deed of trust was void, and summary judgment must be granted as to it.

Further, summary judgment is warranted on the TILA and "interference" claims against Aurora for the reasons set forth above. Accordingly, Aurora and MERS are entitled to summary judgment on all the claims alleged against them, and their motion will be granted in full.

Cal-Western, although not technically party to the summary judgment motion, cannot be liable under for wrongful foreclosure in light of the above findings. Additionally, the count for "breach of contract" alleged specifically against Cal-Western fails to state a claim, because plaintiffs have not alleged facts showing any contractual duties owed by Cal-Western to them. Accordingly, Cal-Western's motion to dismiss must also be granted, in full. In light of the disposition of the summary judgment motion, and Cal-Western's role as merely the party that conducted the foreclosure sale, it is manifest that any amendment would be futile.

### IV. CONCLUSION

Aurora's motion to dismiss the original complaint is denied as moot. Plaintiffs' motion for partial summary judgment is denied. The motion of Aurora and MERS for summary judgment is granted. Cal-Western's motion to dismiss is granted, without leave to amend. A separate judgment will enter. The Case Management Conference set for August 23, 2012 is vacated.

IT IS SO ORDERED.

Dated: 8/8/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE